**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
Kelly A. Noto
Charles A. Germershausen
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

*Counsel for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KELLI CATANESE, ROSS CORRIETTE and JAMES WALDRON, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br>        -against-<br><br>UNILEVER d/b/a BREYERS,<br><br>                              Defendant. | No:<br><br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Kelli Catanese, Ross Corriette and James Waldron ("Plaintiffs"), by and through their attorneys, bring this class action complaint on their own behalf and on behalf of all others similarly situated, to obtain an injunction, damages, costs of suit, and attorneys' fees from defendant Unilever d/b/a Breyers ("Breyers").  Plaintiffs complain and allege upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.       This is a nationwide class action against Breyers on behalf of all persons and entities in the United States who purchased Breyers All Natural Original Ice Cream containing alkalized cocoa or Breyers Smooth & Dreamy ½ Fat All Natural Ice Cream containing alkalized cocoa ("Breyers Ice Cream") in any state (or, in the alternative, any person or entity who purchased Breyers Ice Cream in the State of New Jersey) (the "Class") from November 4, 2004 to present (the "Class Period").

2.       Throughout the Class Period, Breyers misrepresented Breyers Ice Cream as "All Natural" when, contrary to this representation, it contained alkalized cocoa powder – a chemically altered cocoa power which contains potassium carbonate, sodium carbonate, or other alkaline substances – to improve its taste and other properties.

3.       Indeed, natural cocoa powder comes from pressing cocoa beans with no additional modifications.  Natural cocoa powder is one of the richest dietary sources of flavanol antioxidants and, as a result, natural cocoa powder has been increasingly associated with cardiovascular health benefits.

4.       Chemically-altered alkalized cocoa powder, sometimes referred to as "Dutched" (referring to the Dutch chemist who invented the chemical process), is a chemically altered product with that is lower in the health-promoting flavanol antioxidants than natural cocoa.  According to a 2008 study presented in the Journal of Agricultural and Food Chemistry, the chemical process used to create alkalized cocoa powder substantially reduces the amount of beneficial substances it contains.

5.       For this reason, the United States Food and Drug Administration ("FDA") recognizes alkalization as a non-natural process and requires that foods created using an

optional alkali ingredient contain an appropriate disclaimer notifying the consumer that the product was manufactured using an alkali ingredient or identifying the alkali ingredient used in the product.

6.     Nonetheless, Breyers uses the term "All Natural" to advertise, promote and sell Breyers Ice Cream containing alkalized cocoa.  Breyers uses the term "All Natural" knowing that it is regularly used by manufacturers, and understood by consumers, to describe a product that does not have any chemically-altered or man-made ingredients and, therefore, that "All Natural" products are a more healthy choice than competing products that contain processed ingredients.  However, alkalized cocoa is a chemically produced ingredient that does not exist in nature; is not "All Natural;" and research has proven it to be significantly less healthy than competing natural cocoa products.  Accordingly, Breyers' use of the term "All Natural" to label, advertise, promote and sell Breyers Ice Cream containing alkalized cocoa is invariably false and misleading.

7.     Breyers' misleading, inaccurate and deceptive labeling cultivates the perception that Breyers Ice Cream is a more healthy choice than competing products. Plaintiffs and the Class were intended to and did rely upon Breyers' representations when they purchased Breyers Ice Cream.  Plaintiffs and the Class would not have purchased Breyers Ice Cream, or would have paid significantly less for Breyers Ice Cream, if Breyers had not represented that Breyers Ice Cream was "All Natural."  As a result, Breyers has handsomely profited from its misrepresentations to the detriment of Plaintiffs and the Class, which constitutes a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:9-1 *et seq*, among other claims as further set forth herein.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).   The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Class, on the one hand, and Defendant Breyers, on the other, are citizens of different states.

9.      This Court has jurisdiction over Breyers because it maintains its principal headquarters in New Jersey; is registered to conduct business in New Jersey; has sufficient minimum contacts in New Jersey; or otherwise intentionally avails itself of the markets within New Jersey through the promotion, sale, marketing, and distribution of Breyers Ice Cream to render the exercise of jurisdiction by this Court proper and necessary.   Moreover, Breyers' wrongful conduct (as described herein) emanates from New Jersey and foreseeably affects consumers in New Jersey.   Most, if not all, of the events complained of below occurred in or emanated from Breyers' corporate headquarters located in Englewood Cliffs, New Jersey.

10.     Venue is proper in this District under 28 U.S.C. § 1391(a) because Breyers resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

11.     Plaintiff Kelli Catanese is a citizen of the State of New Jersey.   Ms. Catanese purchased Breyers Ice Cream during the Class Period.   At the time of her purchase, Breyers marketed, advertised and promoted Breyers Ice Cream as being "All Natural."   As a result of the "All Natural" representation, Breyers was able to and did

charge Ms. Catanese a premium for each unit of Breyers Ice Cream she purchased.  At the time of each purchase, Ms. Catanese paid a premium for Breyers Ice Cream that she thought was "All Natural."  However, in contrast to the manner in which Breyers marketed, advertised and promoted Breyers Ice Cream, the Breyers Ice Cream purchased by Ms. Catanese was not "All Natural" as represented.  As a result of Breyers' misleading, and/or inaccurate, and/or deceptive marketing, advertising and promotion of Breyers Ice Cream, Ms. Catanese suffered an ascertainable loss in that she paid a premium for Breyers Ice Cream that she believed to be "All Natural" but received something less than and different from what was promised and bargained for; a product that was not "All Natural."  Had Breyers informed Ms. Catanese at the time of her purchase that the Breyers Ice Cream she purchased was not "All Natural," she would not have purchased the Breyers Ice Cream or would have paid substantially less for the Breyers Ice Cream that she purchased.

12.     Plaintiff Ross Corriette is a citizen of the State of New Jersey.  Mr. Corriette purchased Breyers Ice Cream during the Class Period.  At the time of his purchase, Breyers marketed, advertised and promoted Breyers Ice Cream as being "All Natural."  As a result of the "All Natural" representation, Breyers was able to and did charge Mr. Corriette a premium for each unit of Breyers Ice Cream he purchased.  At the time of each purchase, Mr. Corriette paid a premium for Breyers Ice Cream that he thought was "All Natural."  However, in contrast to the manner in which Breyers marketed, advertised and promoted Breyers Ice Cream, the Breyers Ice Cream purchased by Mr. Corriette was not "All Natural" as represented.  As a result of Breyers' misleading, and/or inaccurate, and/or deceptive marketing, advertising and promotion of

Breyers Ice Cream, Mr. Corriette suffered an ascertainable loss in that he paid a premium for Breyers Ice Cream that he believed to be "All Natural" but received something less than and different from what was promised and bargained for; a product that was not "All Natural." Had Breyers informed Mr. Corriette at the time of his purchase that the Breyers Ice Cream he purchased was not "All Natural," he would not have purchased the Breyers Ice Cream or would have paid substantially less for the Breyers Ice Cream that he purchased.

13. Plaintiff James Waldron is a citizen of the State of New Jersey. Mr. Waldron purchased Breyers Ice Cream during the Class Period. At the time of his purchase, Breyers marketed, advertised and promoted Breyers Ice Cream as being "All Natural." As a result of the "All Natural" representation, Breyers was able to and did charge Mr. Waldron a premium for each unit of Breyers Ice Cream he purchased. At the time of each purchase, Mr. Waldron paid a premium for Breyers Ice Cream that he thought was "All Natural." However, in contrast to the manner in which Breyers marketed, advertised and promoted Breyers Ice Cream, the Breyers Ice Cream purchased by Mr. Waldron was not "All Natural" as represented. As a result of Breyers' misleading, and/or inaccurate, and/or deceptive marketing, advertising and promotion of Breyers Ice Cream, Mr. Waldron suffered an ascertainable loss in that he paid a premium for Breyers Ice Cream that he believed to be "All Natural" but received something less than and different from what was promised and bargained for; a product that was not "All Natural." Had Breyers informed Mr. Waldron at the time of his purchase that the Breyers Ice Cream he purchased was not "All Natural," he would not have purchased the Breyers

Ice Cream or would have paid substantially less for the Breyers Ice Cream that he purchased.

14.     Breyers, a wholly-owned subsidiary of its ultimate corporate parent, Unilever Group, is a Delaware corporation authorized to do business in New Jersey with its corporate headquarters and principal place of business located at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.  At all times relevant hereto, Breyers was in the business of manufacturing, labeling, distributing, advertising, marketing, promoting, and/or selling Breyers Ice Cream in interstate commerce and in New Jersey.

## PLAINTIFFS' CLASS ALLEGATIONS

15.     Plaintiffs seek to bring this case as a nationwide class action on behalf of themselves and all others similarly situated in the United States as members of the proposed Class, defined, in the alternative, as follows:

> All persons and entities in the United States who purchased Breyers Ice Cream from November 4, 2004 to present;

> **or**

> All persons and entities in the United States who purchased Breyers Ice Cream in the State of New Jersey from November 4, 2004 to present.

16.     Excluded from the Class are all claims for wrongful death, survivorship and/or personal injury by Class members.  Also excluded from the Class is Breyers, any entity in which Breyers has a controlling interest, and its legal representatives, heirs, and successors.

## NUMEROSITY

17.     The Class is so numerous that joinder of all of its members is impractical. Upon information and belief, Breyers has sold thousands of units of Breyers Ice Cream throughout the United States and the State of New Jersey.

18.     Although the precise number of Class members is unknown to Plaintiffs, that information is readily ascertainable from Breyers' records.

## COMMON QUESTIONS OF LAW AND FACT

19.     Common questions of law and fact exist as to all Class members.  These questions predominate over questions affecting only individual Class members.  These common legal and factual questions include but are not limited to the following:

    a.      Whether Breyers Ice Cream is "All Natural";

    b.      Whether Breyers misrepresented material facts in connection with the labeling, marketing and sale of Breyers Ice Cream;

    c.      Whether Breyers misrepresented, misled or deceived consumers into believing, or wrongfully suggested, that Breyers Ice Cream has characteristics, benefits, or qualities that it does not have;

    d.      Whether Breyers' acts, practices and misrepresentations in connection with the promotion and sale of Breyers Ice Cream violate the New Jersey Consumer Fraud Act;

    e.      Whether Breyers breached its express warranty that Breyers Ice Cream is "All Natural";

f.      Whether Breyers was unjustly enriched and Plaintiffs and the Class are entitled to Restitution as a result of Breyers' misleading claim that Breyers Ice Cream is "All Natural";

g.      Whether Breyers breached its Implied Warranty of Merchantability that Breyers Ice Cream is "All Natural";

h.      Whether Breyers breached its Implied Warranty of Fitness for a Particular Purpose that Breyers Ice Cream is "All Natural";

i.      Whether Plaintiffs and the Class are entitled to an injunction, declaratory judgment, damages, treble damages, and attorneys' fees.

## **TYPICALITY**

20.     Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and each member of the proposed Class purchased Breyers Ice Cream.  In connection with their respective purchases, Plaintiffs and each Class member were subject to the same misleading representation that Breyers Ice Cream is "All Natural."  Similarly, Plaintiffs and all Class members sustained damages which were directly caused by Breyers' actions as alleged herein.

## **ADEQUACY OF REPRESENTATION**

21.     Plaintiffs can and will fairly and adequately represent and protect the interests of the Class and have no interests that conflict with or are antagonistic to the interests of the Class.  Plaintiffs have retained attorneys competent and experienced in class action litigation.

**SUPERIORITY**

22.     A class action is superior to any other available method for the fair and efficient adjudication of this controversy, since, as demonstrated above, common questions of law and fact overwhelmingly predominate over any individual questions that may arise.

23.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Breyers, or adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

24.     Breyers has acted or refused to act on grounds generally applicable to all Class members, thereby making appropriate any final judgment with respect to the Class as a whole.

**SUBSTANTIVE ALLEGATIONS**

**Breyers' Representations**

25.     Breyers has historically marketed Breyers Ice Cream as "All Natural."

26.     Breyers prominently displays on each of its Breyers Ice Cream packages the term "All Natural" as well as a "Pledge of Purity" which prominently states, "WE PLEDGE THAT THE BREYERS ICE CREAM IN THIS PRODUCT IS ALL NATURAL.   WE HAVE USED ONLY PURE INGREDIENTS FROM NATURAL SOURCES."

 

27.     In addition, Breyers maintains a website, www.breyers.com, which allows consumers throughout the United States, including New Jersey, to view marketing, advertising and promotional information pertaining to Breyers Ice Cream.

28.     Breyers' website prominently displays the statement "Naturally Made Since 1866," and further touts Breyers' "Pledge of Purity" as a guarantee that Breyers uses "the highest quality, all natural ingredients available." http://www.breyers.com/OurHistory.aspx.

29.     Breyers' website further represents Breyers Ice Cream as "All Natural Original." http://www.breyers.com/products/all-natural-ice-cream.aspx.

30.     Breyers also produces television commercials specifically touting its "All Natural" branding, such as the one that can be accessed at http://www.youtube.com/watch?v=TwPRk0o7V3w&p=8295D289D6923B97&playnext= 1&index=42, which references Breyers' Pledge of Purity, repeatedly emphasizing the portions of the Pledge of Purity that state that Breyers Ice Cream is "All Natural" and uses only "Pure Ingredients from Natural Sources."  The television commercial further identifies Breyers Ice Cream as "The All Natural Ice Cream."

31.     The term "Natural" is not defined by the FDA, but is regularly used by manufacturers, and understood by consumers, to describe a product that does not have any chemically-altered or man-made ingredients and, therefore, is a more healthy choice than competing products that contain processed ingredients.

32.     As a result of this understanding, consumers pay a premium for "All Natural" products and, therefore, Breyers Ice Cream.

33.     However, contrary to Breyers' representations, the following flavors of Breyers Ice Cream are made with alkalized cocoa and, therefore, are not "All Natural":

a.   <u>Breyers All Natural Ice Cream</u>

   i.    Black Raspberry Chocolate
   ii.   Chocolate
   iii.  Chocolate Chip
   iv.   Chocolate Chip Cookie Dough
   v.    Cookies and Cream
   vi.   Extra Creamy Chocolate
   vii.  Mint Chocolate Chip
   viii. NASCAR Checkered Flag Vanilla & Chocolate
   ix.   Rocky Road
   x.    Triple Chocolate
   xi.   Vanilla, Chocolate
   xii.  Vanilla Fudge Brownie
   xiii. Vanilla Fudge Twirl
   xiv.  Vanilla, Chocolate, Strawberry

b.   <u>Breyers Smooth & Dreamy ½ Fat All Natural Ice Cream</u>

   i.    Caramel Tracks
   ii.   Chocolate Chocolate Chip
   iii.  Coffee Fudge Brownie
   iv.   Cookies & Cream
   v.    Creamy Chocolate
   vi.   Dark Chocolate Velvet
   vii.  Mint Chocolate Chip
   viii. Rocky Road
   ix.   Vanilla, Chocolate, Strawberry

34.     Despite the use of alkalized cocoa in Breyers Ice Cream, Breyers makes the representation that Breyers Ice Cream is "All Natural" in its packaging and its promotional literature and advertisements with the intention that Plaintiffs and the Class would be exposed to and would rely upon the representations and purchase, and pay a premium for, Breyers Ice Cream as a result.

35.     Plaintiffs and the Class did, in fact, rely on Breyers' representation that Breyers Ice Cream is "All Natural" in purchasing Breyers Ice Cream, and would not have purchased it, or would have paid substantially less for it, had the misrepresentations not been made.

**The Alkalized Cocoa in Breyers Ice Cream is Not Natural**

36.     Breyers does not use natural cocoa powder in its ice cream.  Instead, Breyers uses alkalized cocoa powder to produce Breyers Ice Cream.

37.     Alkalization is a 180 year old treatment process created by a Dutch chemist, also known as "Dutching," used to chemically modify cocoa powder.  The process entails adding certain ingredients such as potassium carbonate or sodium carbonate to natural cocoa powder, and allowing the mixture to react.  This changes the chemical composition and pH levels of the resulting product, and also changes the flavor and appearance.

38.     Alkalized cocoa powder is not a natural product and does not contain many of the health benefits of natural cocoa powder.

39.     Indeed, according to a 2008 study published in the Journal of Agriculture and Food Chemistry entitled, "Impact of Alkalization on the Antioxidant and Flavanol Content of Commercial Cocoa Powders" (the "2008 Study"), natural cocoa has been

increasingly associated with cardiovascular health benefits including lowering blood pressure and decreasing mortality due to cardiovascular disease. These benefits are conferred, in part, by the flavanol antioxidants found in natural cocoa powder. Natural cocoa powder is one of the richest dietary sources of flavanols identified thus far, exceeded only by a few food ingredients such as buckwheat and cinnamon.

40. The 2008 Study also reported that alkalized cocoa powder varies by degree of alkalization; it can be lightly, medium, or heavily alkalized. Regardless of the degree the cocoa is alkalized, the process affects the natural cocoa in a very predictable and significant way – it decreases the beneficial cardiovascular-active flavanols that natural cocoa powder contains. The 2008 Study demonstrated that alkalization destroyed approximately 60% of these flavanols when the natural cocoa powder was lightly alkalized, and up to 100% of the flavanols in highly alkalized cocoa powder.

41. Accordingly, Breyers' use of the term "All Natural" to label, promote and sell Breyers Ice Cream is misleading and inaccurate. Alkalized cocoa powder is highly processed; does not exist in nature; and research has proven it to be significantly less healthy than competing natural cocoa products.

42. While the FDA does not define the term "Natural," it does provide guidance to consumers that "Natural" means that nothing artificial or synthetic has been included in, or added to a food that would normally not be expected in the food. 58 Fed. Reg. 2302.

43. Although the term is not officially defined, the FDA has used this and other regulations to send warning letters to companies that have previously used the term "All Natural" to describe products that contained ingredients such as potassium sorbate or

citric acid.  *See, e.g.*, FDA Warning Letter to Oak Tree Farm Diary, Inc. (dated August 16, 2001).

44.     In addition, recognizing that alkalized cocoa is not "natural" and is significantly processed, the FDA requires that "cacao products" processed with alkali ingredients must state on the label that the "cacao" was "Processed with alkali" or name the specific alkali ingredient used in the product.  21 C.F.R. § 163.110.

45.     The Center for Science in the Public Interest in Washington D.C. ("CSPI"), prominently known for advocating government policies that are consistent with scientific evidence and health and environmental issues, had been lobbying since 2002, and has recently succeeded, in removing the label "All Natural" from another brand of ice cream that contain alkalized cocoa.  In successfully removing the label "All Natural" from various Ben & Jerry's flavors, the CSPI publicly stated:

> Cocoa processed with alkali is the most frequently used unnatural ingredient as it is used in 36 Ben & Jerry's flavors.  Treating cocoa with an alkalizing agent changes the chemical structure, taste, and appearance of cocoa and reduces its acidity and flavanol content.  Flavanols are antioxidants with possible health benefits.  Indeed, Unilever [d/b/a Breyers] itself recently sponsored research to investigate an association between flavanol intake and the incidence of stroke.  In addition, the Hershey Center for Health and Nutrition (part of the candy company) specifically distinguishes alkalized cocoa powder from natural cocoa powder.
>
> *     *     *
>
> Although the FDA does not have a formal definition of the word natural, the agency's acting director of regulatory guidance explained in a letter that the agency has "consistently discouraged the use" of the term "because its meaning is ambiguous and may unjustifiably imply to consumers that foods labeled as 'natural' are inherently superior to other foods…."

"Most 'All Natural' Ben & Jerry's Flavors Have Unnatural Ingredients," Center for Science in the Public Interest (August 12, 2010), *available at* http://www.cspinet.org/new/201008121.html.

46.     Breyers' use of the term "All Natural" to brand products that contain cocoa "processed with alkali" is false and misleading.   Breyers uses the term "All Natural" to separate itself in the market and to obtain a premium for its products, creating the misleading impression that Breyers Ice Cream is not chemically-altered and does not contain man-made ingredients and, therefore, is a more healthy choice than competing products.   Breyers' use of a significant chemical process to create alkalized cocoa – a man-made, chemically-altered ingredient – makes Breyers Ice Cream less healthy than if Breyers had chosen to use natural cocoa powder, as the term "All Natural" implies. Consumers have been mislead and damaged by Breyers' conduct, and Breyers must reconcile its labeling and advertising to reflect the true content of Breyers Ice Cream.

47.     Had Plaintiffs and the Class been advised that Breyers Ice Cream was not "All Natural," Plaintiffs and the Class would not have purchased, or would have paid substantially less for, Breyers Ice Cream.

48.     As a result of Breyers' misrepresentations, Plaintiffs and the Class have been injured and damaged.   Plaintiffs and the Class purchased Breyers Ice Cream that they otherwise would not have purchased and paid more for Breyers Ice Cream than they otherwise would have paid, all to the financial benefit of Breyers.

# COUNT I

## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

49.     Plaintiffs reallege and incorporate by reference each and every allegation above as though fully set forth herein.

50.     The New Jersey Consumer Fraud Act, N.J.S.A. §56:8-2, provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice….

51.     Breyers' business practices of marketing, advertising and promoting Breyers Ice Cream in a misleading, and/or inaccurate, and/or deceptive manner by misrepresenting Breyers Ice Cream as "All Natural" constitutes the use by Breyers of unconscionable commercial practices, deception, and misrepresentation and, thus constitutes multiple, separate violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*.

52.     In marketing, advertising and promoting Breyers Ice Cream, Breyers made the misrepresentations set forth herein across the United States, including in New Jersey.

53.     Breyers misrepresented its products as being "All Natural" while failing to disclose the fact that alkalized cocoa is not "All Natural."

54.     Breyers' conduct has the capacity to mislead or deceive consumers, including Plaintiffs and members of the Class.

55.     Breyers' unconscionable commercial practices, false promises, misrepresentations and omissions set forth herein are material in that they relate to matters which reasonable persons, including Plaintiffs and members of the Class, would attach importance in their purchasing decisions or conduct regarding the purchase of Breyers Ice Cream.

56.     As a result of Breyers' practices as set forth herein, Plaintiffs and members of the Class have suffered an ascertainable loss and are entitled to damages.

57.     As a direct and proximate result of Breyers' conduct, Plaintiffs and the Class are entitled to treble damages and attorneys' fees.

## COUNT II

## BREACH OF EXPRESS WARRANTY

58.     Plaintiffs reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein.

59.     Breyers expressly warranted in its marketing, advertising and promotion of Breyers Ice Cream that Breyers Ice Cream is "All Natural."

60.     Plaintiffs, and all others similarly situated, relied in good faith upon Breyers' warranty in making their determination to purchase Breyers Ice Cream.

61.     Plaintiffs, and all others similarly situated, purchased Breyers Ice Cream based upon Breyers' warranty that Breyers Ice Cream is "All Natural."

62.     Breyers breached its express warranty by including alkalized cocoa in the Breyers Ice Cream that it marketed, advertised and promoted as "All Natural."  Alkalized cocoa is a highly processed, man-made, substitute for natural cocoa that is manufactured

using alkali to alter the chemical structure of the cocoa.  Alkalized cocoa does not exist in nature and is not "All Natural."

63.     As a direct and proximate result of Breyers' breach of its express warranty, Plaintiffs and the members of the Class have been damaged in that they did not receive the product as specifically warranted and/or paid a premium for the product because they believed it was "All Natural."

## COUNT III

## UNJUST ENRICHMENT AND COMMON LAW RESTITUTION

64.     Plaintiffs reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein.

65.     As a result of Breyers' wrongful and deceptive conduct, Plaintiffs and members of the Class have suffered a detriment while Breyers has received a benefit.

66.     Plaintiffs and members of the Class paid a premium price for Breyers Ice Cream represented to be "All Natural," but received something of lesser value – Breyers Ice Cream that contained alkalized cocoa and was not "All Natural."

67.     Breyers has received a premium price benefit from Plaintiffs and members of the Class.

68.     Breyers should not be allowed to retain the premium price profits generated from the sale of products that were unlawfully marketed, advertised and promoted.

69.     Allowing Breyers to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

70.     Thus, Breyers is in possession of funds which were wrongfully retained from consumers and which should be disgorged as illegally gotten gains.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

71.     Plaintiffs reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein.

72.     Breyers manufactures, markets, sells and distributes Breyers Ice Cream.

73.     Breyers is a merchant because it markets, sells and distributes Breyers Ice Cream to Plaintiffs and the Class.

74.     Breyers reasonably expected Plaintiffs and the Class to use Breyers Ice Cream in an ordinary and foreseeable manner.

75.     Breyers impliedly warranted that the Breyers Ice Cream it manufactured, sold and distributed was "All Natural," and in doing so, that the products were of merchantable quality.  Breyers did so with the intent to induce Plaintiffs and members of the Class to purchase those products.

76.     Breyers breached its implied warranty of merchantability in that the products were not of merchantable quality at the time of sale because the products were not "All Natural" and, thus, were not as marketed, advertised and promoted.

77.     Breyers had prior knowledge and notice of the inferior nature of Breyers Ice Cream at the time Breyers Ice Cream was sold.

78.     Had Plaintiffs and the members of the Class known the true facts, they either would not have purchased the products or would not have been willing to pay the premium price Breyers charged for the products.

79.     As a direct and proximate result of Breyers' breach of the implied warranty of merchantability, Plaintiffs and members of the Class have been injured and suffered damages.

## COUNT V

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

80.     Plaintiffs reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein.

81.     Breyers manufactures, markets, distributes and sells Breyers Ice Cream to Plaintiffs and the Class.

82.     Breyers impliedly warranted that Breyers Ice Cream was fit for the particular purpose of providing Plaintiffs and the Class members with an "All Natural" product.

83.     Pursuant to warranty, Breyers' warranted that it would provide Plaintiffs and the Class with a product that was "All Natural."

84.     Breyers breached this implied warranty because Breyers Ice Cream that contained alkalized cocoa was not fit for the particular "All Natural" purpose for which it was intended.

85.     Breyers had prior knowledge and notice of the inferior nature of Breyers Ice Cream and, therefore, of its breaches of warranty, but took no action to remedy the inferiority or to cure the breach.

86.     As a direct and proximate result of Breyers' breaches of the implied warranty of fitness for a particular purpose, Plaintiffs and members of the Class have been injured and suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court to enter judgment against Breyers and in favor of Plaintiffs, on behalf of themselves and the Class, and to award the following relief:

A.      Certifying this action as a nationwide class action (or in the alternative as a New Jersey class action), certifying Plaintiffs as representatives of the Class and designating their counsel as counsel for the Class;

B.      An injunction preventing Breyers from using the term "All Natural" and the "Pledge of Purity" to label, market, promote and sell Breyers Ice Cream containing alkalized cocoa;

C.      A declaration that the use of the phrase "All Natural" in the marketing, advertising and promotion of products containing alkalized cocoa is misleading, inaccurate and deceptive;

D.      A declaration that Breyers' use of the phrase "All Natural" in the marketing, advertising and promotion of Breyers Ice Cream containing alkalized cocoa violates the New Jersey Consumer Fraud Act, N.J.S.A. §56:8-1 *et seq.*;

E.      A declaration that Breyers breached express warranties, implied warranties of merchantability, and implied warranties of fitness in labeling, representing, marketing, advertising and promoting Breyers Ice Cream as "All Natural";

F.      A declaration that Breyers has been unjustly enriched by its unlawful practices;

G.      An Order directing Breyers to disgorge profits derived from its unlawful practices and to pay restitution to Plaintiffs and all members of the Class;

H.      An Order compelling Breyers to reimburse Plaintiffs and all members of the Class in an amount equal to their ascertainable loss as described herein;

I.      Awarding the Plaintiffs and each Class member compensatory damages for the acts complained of herein;

J.      Awarding the Plaintiffs and each Class member treble damages for the acts complained of herein;

K.      Awarding the Plaintiffs and each Class member costs and attorneys' fees, as allowed by law, and/or awarding counsel for the Class attorneys' fees;

L.      Awarding the Plaintiffs and each class member statutory pre-judgment interest;

M.      For legal and equitable relief as this Court may deem just and proper; and

N.      Granting such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all issues so triable.

Dated:  November 4, 2010                    **GARDY & NOTIS, LLP**


By:   s/Mark C. Gardy
                Mark C. Gardy
                James S. Notis
                Kelly A. Noto
                Charles A. Germershausen
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

*Counsel for Plaintiffs*