**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KELLI CATANESE, ROSS CORRIETTE and JAMES WALDRON, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiffs, | : : | **OPINION**  Civ. No. 10-5755 (WHW) |
| v. | : : : | |
| UNILEVER d/b/a/ BREYERS, | : : : | |
| Defendant. | : : : : : : | |

**<u>Walls, Senior District Judge</u>**

Defendant moves to dismiss, stay or transfer this matter pursuant to the first-filed rule. Plaintiffs oppose the motion. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motion is decided without oral argument. Defendant's motion to transfer is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action (the "Catanese action") on November 4, 2010, as a "nationwide class action against Breyers on behalf of all persons and entities in the United States who purchased Breyers All Natural Original Ice Cream containing alkalized cocoa or Breyers Smooth & Dreamy ½ fat All Natural Ice Cream containing alkalized cocoa" in any state from November 4, 2004, to present. (Pl. Ex. A, Compl. at ¶ 1.) Alternatively, the plaintiffs seek to represent any person or entity who purchased Breyers Ice Cream in the State of New Jersey. (Id.) Plaintiffs' complaint alleges that the defendant misrepresented Breyers Ice Cream as "all natural," when in

1

**FOR PUBLICATION**

fact it contained alkalized cocoa powder.  (Id. at ¶ 2.)  The plaintiffs allege that alkalized cocoa

powder is chemically altered (making it non-natural).  The chemically-altered cocoa powder

(sometimes referred to as "Dutch cocoa") is "lower in the health-promoting flavanol antioxidants

than natural cocoa."  (Id. at ¶ 4.)  The plaintiffs claim that the United States Food and Drug

Administration ("FDA") "recognizes alkalization as a non-natural process," and that food created

using an alkali ingredient must contain an appropriate disclaimer.  (Id. at ¶ 5.)

The plaintiffs assert that the term "all natural" means "a product that does not have any

chemically-altered or man-made ingredients."  (Id. at ¶ 6.)  They claim to be injured by

"Breyers' misleading, inaccurate and deceptive labeling."  They say that "Plaintiffs and the Class

would not have purchased Breyers Ice Cream, or would have paid significantly less for Breyers

Ice Cream," if the "all natural" representations had not been made.  (Id. at ¶ 7.)  The plaintiffs

assert violations of the New Jersey Consumer Fraud Act, breach of warranty claims, unjust

enrichment and common law restitution.  (Id., Counts I-V.)  They seek injunctive and declaratory

relief, including disgorgement of profits and compensatory damages. (Id., Prayer for Relief.)

The defendant argues that this case is virtually identical to an earlier-filed putative class

action pending in the United States District Court for the Northern District of California, entitled

Thurston v. Conopco, Inc. d/b/a Unilever, No. 10-cv-4937.  Thurston was filed on November 1,

2010.  The Thurston plaintiffs seek to bring an action on behalf of themselves and "all

consumers who, on or after October 20, 2006, purchased in the United States Breyers' Ice Cream

products that were labelled all natural but contained alkalized cocoa processed with a synthetic

ingredient."  (Df. Ex. 2, Thurston Am. Compl. at ¶ 25.)  Alternatively, the plaintiffs seek to

represent purchasers of Breyers Ice Cream in California.  (Id. at ¶ 26.)  The plaintiffs have

brought claims for common law fraud, violations of California state law, unjust enrichment and

**FOR PUBLICATION**

common law restitution.  (Id., Causes of Action.)  They seek injunctive and declaratory relief,

including disgorgement of profits and compensatory and punitive damages.  (Id., Prayer for

Relief.)

The defendants also point to another class action, Astiana v. Ben & Jerry's Homemade,

Inc., No. 10-cv-4387 (PJH), which has been pending in the Northern District of California since

September 2010.  This action also concerns the use of the term "all natural" on ice cream

containing alkalized cocoa, albeit ice creams bearing the Ben & Jerry's label.  (Df. Ex. 3, Astiana

Am. Compl.)  Ben & Jerry's and Breyers are both Unilever brands.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district . . . where it might have been brought."  28

U.S.C. § 1404(a).  To transfer an action under Section 1404(a), venue must be proper both in the

transferor court and the transferee court.  Osteotech, Inc. v. GenSci Regeneration Scis., Inc., 6 F.

Supp. 2d 349, 357 (D.N.J. 1998).  The party seeking to transfer must show that the alternative

venue is not only adequate, but also more convenient than the current one.  Jumara v. State Farm

Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  "[T]he decision to transfer must incorporate all

relevant factors to determine whether on balance the litigation would more conveniently proceed

and the interests of justice be better served by transfer to a different forum."  Rappoport v.

Steven Spielberg, Inc., 16 F. Supp. 2d 481, 498 (D.N.J. 1998) (quotation and citations omitted).

A court balances private and public interests when deciding to transfer venue.  Jumara, 55

F.3d at 879.  Private interests include a plaintiff's choice of forum, a defendant's preference,

convenience of the parties as indicated by their physical and financial condition, convenience of

witnesses to the extent that they may be unavailable in one forum, and the location of books and

FOR PUBLICATION

records to the extent they could not be produced in alternative fora.  Id.  The public interests that

a court considers include enforceability of a judgment, practical considerations that could make

the trial easy, expeditious or inexpensive, relative administrative difficulty in the two fora

resulting from court congestion, local interest in deciding a local controversy, public policies of

the fora, and familiarity of the district court with applicable state law.  Id. at 879-80.

The Third Circuit Court of Appeals has adopted the first-filed rule, which states that "in

all cases of federal concurrent jurisdiction, the court which first has possession of the subject

must decide it."  EEOC v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988) (quoting

Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)).  The rule "encourages

sound judicial administration and promotes comity among federal courts of equal rank."  Id. at

971.  Its primary purpose is to "avoid burdening the federal judiciary and to prevent the judicial

embarrassment of conflicting judgments."  Id. at 977 (citing Church of Scientology v. United

States Dept. of Army, 611 F.2d 738, 750 (9th Cir.1979)).  Although exceptions to the rule are

rare, it is not a "rigid or inflexible rule to be mechanically applied" because it is grounded in

principles of equity.  Id. at 976-77 (quoting Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93,

95 (9th Cir.1982)).  Rare or extraordinary circumstances, inequitable conduct, bad faith, and

forum shopping are proper bases upon which a court may decline to apply the first-filed rule.  Id.

at 976.

## DISCUSSION

### A.  Applicability of the First-Filed Rule

The Court finds that the first-filed rule is applicable here, as between the Catanese action

and the Thurston action.  As this Court has previously recognized, the most important

consideration in a first-filed rule analysis is overlapping subject matter.  Ivy-Dry, Inc. v. Zanfel

4

**FOR PUBLICATION**

Labs., Inc., Civ. No. 08-4942, 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) (citing EEOC, 850 F.2d at 971). The plaintiffs argue that their complaint is not duplicative, saying that it "assert[s] entirely different claims on behalf of an entirely different class." (Pl. Br. at 1.) However, they concede that "the Thurston Action has similar allegations to the New Jersey Action." (Pl. Br. at 8.) The Court finds that the overlapping subject matter of these two actions cannot be denied with a straight face. Both actions name Unilever's Breyers brand as the target defendant, and assert claims on behalf of a nationwide class of consumers who purchased Breyers ice cream containing alkalized cocoa.[1] Each complaint asserts claims concerning an identical list of twenty-three ice cream flavors.[2] Both complaints allege that alkalized cocoa is not natural,[3] describe the "Dutch" processing in detail,[4] and allege that this process destroys flavanols present in the cocoa.[5] Both complaints cite the Breyers website,[6] FDA issuances,[7] and claims made by the Center for Science in the Public Interest.[8] Both complaints allege that the plaintiffs relied upon Breyers misrepresentations, and bring claims for consumer fraud and unjust enrichment. The plaintiffs seek similar relief, including disgorgement of profits, an injunction and damages.

The plaintiffs assert that there is not identity of the parties because the two actions were brought on behalf of different classes. This Court has previously said that "a plain reading of the Third Circuit's opinion in EEOC strongly suggests that whether the cases share subject matter is more important than the absolute identity of the parties." Ivy-Dry, 2009 WL 1851028, at *5 (citing EEOC, 850 F.2d at 971). "If the first-filed rule failed to focus on the overlap of the

---

[1] Compare Catanese Compl. ¶ 1, with Df. Ex. 2, Thurston Compl. ¶ 1.
[2] Compare Catanese Compl. ¶ 33, with Df. Ex. 2, Thurston Compl. ¶ 21.
[3] Compare Catanese Compl. ¶ 2, with Df. Ex. 2, Thurston Compl. ¶ 1.
[4] Compare Catanese Compl. ¶ 37, with Df. Ex. 2, Thurston Compl. ¶ 13.
[5] Compare Catanese Compl. ¶ 37, with Df. Ex. 2, Thurston Compl. ¶ 13.
[6] Compare Catanese Compl. ¶ 28, with Df. Ex. 2, Thurston Compl. ¶ 22.
[7] Compare Catanese Compl. ¶ 42, with Df. Ex. 2, Thurston Compl. ¶ 14.
[8] Compare Catanese Compl. ¶ 45, with Df. Ex. 2, Thurston Compl. ¶ 21.

**FOR PUBLICATION**

subject matter it might encourage rather than discourage duplicative suits because parties who are aware of pending suits but not yet party to them might seek to file suit in more favorable fora." Id. at *6. That is exactly what would happen here if the first-filed rule did not apply. The Thurston plaintiffs allege that Unilever's marketing of its Breyers ice cream products as "all natural" is false and misleading because they contain a "non-natural" ingredient, namely alkalized cocoa powder. The Catanese plaintiffs make the exact same allegations against the exact same defendant, but have brought suit in New Jersey, where they are seeking treble damages under the New Jersey Consumer Fraud Act. (Pl. Ex. A, Compl., Prayer for Relief.) This is the sort of situation that the first-filed rule is intended to prevent.

Moreover, "[i]n a class action, the classes, and not the class representatives, are compared." Ross v. U.S. Bank Nat'l Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008). Here, the class representatives are different, but the proposed classes are identical (i.e., a nationwide class of purchasers of Breyers' ice cream containing alkalized cocoa). If nationwide classes were certified in both actions, each of the named plaintiffs would be included in the other's class. This Court cannot allow a parallel action to proceed which involves putative absent class members from an earlier-filed class action. Such a situation would cause substantial duplication of effort, and worse, potentially inconsistent rulings. This would frustrate one of the primary purposes of the rule, which is to avoid the embarrassment of conflicting judgments. EEOC, 850 F.2d at 977.

The plaintiffs argue that the Thurston complaint should not be considered "first filed" because it was filed "a mere three days before the Catanese action." (Pl. Br. at 11.) Plaintiffs do not dispute, however, that Thurston was filed *first*, and that is all that matters for purposes of the rule. The plaintiffs cite district court opinions from Kansas and Virginia for the proposition that

**FOR PUBLICATION**

"small differences" between filing dates may be ignored.  However, the Third Circuit has held

that the policy reasons underlying the first-filed rule are "just as valid when applied to the

situation where one suit precedes the other *by a day* as they are in a case where a year intervenes

between the suits."  Crosley Corp. v. Westinghouse Elec. & Mfg. Co., 130 F.2d 474, 475 (3d Cir.

1942) (emphasis added).   Moreover, the cases cited by the plaintiffs involved application of an

exception to the rule where declaratory judgment actions were brought as pre-emptive strikes to

avoid the second forum, see Boilmakers Nat'l Health and Welfare Trust v. Steele, Civ. No. 09-

2329, 2010 WL 2287477 (D. Kan. June 2, 2010) and Emp'rs Reinsurance Corp. v. MSK Ins.

Ltd., Civ. No. 01-2608, 2003 WL 21143105 (D. Kan. Mar. 31, 2003), or where jurisdiction over

the defendant in the first-filed case was doubtful.  See Affinity Memory & Micro v. K&O Enter.,

20 F. Supp. 2d 948 (E.D. Va. 1998).

   Plaintiffs also argue that if Thurston is found to be first-filed, that the original Thurston

complaint should control for purposes of the rule, rather than the amended complaint, because

Thurston "originally asserted only California state law claims on behalf of a California class of

individuals."  (Pl. Br. at 1.)  The plaintiffs argue that the Catanese action "was actually the first-

filed action that sought to certify a national class of Breyers Ice Cream purchasers."  However, as

this Court has previously stated, "the [relevant] date for purposes of the first-filed rule is when

the case is filed, not when any amended complaint is filed."  Ivy-Dry, 2009 WL 1851028, at *5.

   Finally, the plaintiffs argue that the first-filed rule is inapplicable because the actions seek

to apply different state law.  The Court finds that the differences in the causes of action and

remedies sought are insufficiently material to prevent application of the first-filed rule.  The

factual allegations underlying these claims are exactly the same.  The plaintiffs in both cases

accuse Unilever of misleading consumers by labeling ice cream containing alkalized cocoa as

FOR PUBLICATION

"all natural."  Where two actions filed in different districts involve the same parties and the same

issues, and "differ only as to the remedy sought," the first-filed rule applies.  See Pacesetter Sys.,

Inc. v. Medtronic, Inc., 678 F.2d 93, 95-96 (9th Cir. 1982).  Again, overlapping subject matter is

the key; exact identity of claims is not required.  See Ivy-Dry, 2009 WL 1851028, at *2 (finding

that the first-filed rule applied despite additional claims in second action for common law trade

and product disparagement, tortious interference, defamation and unfair competition).  Indeed, in

a class action situation such as this, it would be impossible for the claims to overlap exactly

where the actions are brought in different states, and the purpose of the rule would be defeated.

There would be nothing to stop plaintiffs in all 50 states from filing separate nationwide class

actions based upon their own state's law.  The Court finds that the first-filed rule applies and that

transfer is warranted.

### B.  Transfer

The Court must also consider whether transfer is appropriate under Section 1404.

Because the subject matter of the respective cases is the same, the interest each plaintiff holds in

the forum of its choice does not tip the balance.  See Kowalski v. YellowPages.com, LLC, Civ.

No. 09-2382, 2010 WL 3323749, at *9 (D.N.J.  Aug. 18, 2010) ("A plaintiff's choice of forum is

a preference, and not a right.  Courts have consistently held that the weight accorded to a

plaintiff's choice of forum is considerably reduced in class actions.") (citations omitted).  To

credit one plaintiff's interest in its chosen forum is to discredit the same interest of the other

plaintiff.  The plaintiffs insist that New Jersey is the appropriate venue for this action because the

defendant's corporate headquarters and principal place of business are in New Jersey.  However,

what plaintiffs ignore is that the California action will continue, regardless.  There has been no

argument that the defendant is not subject to personal jurisdiction in California, and the

**FOR PUBLICATION**

defendant has not challenged that court's jurisdiction.  This factor alone favors transfer.  See <u>Am. Inst. for History Educ., LLC v. E-Learning Sys. Int'l LLC</u>, Civ. No. 10- 2607, 2010 WL 4746233, at *3 (D.N.J. Nov. 16, 2010) ("Courts in this Circuit have frequently held that the pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue.") (citations omitted).

Conducting this class action in one forum will benefit both the public and private interests by avoiding duplicative litigation.  If actions continue in both California and New Jersey, Unilever will be forced to defend identical actions on opposite ends of the country.  This would inevitably include duplication of a large amount of discovery and documentary evidence. In comparison, there is very little burden on the plaintiffs.  Their involvement is limited to purchasing ice cream.  They will have little, if any, documentary evidence to contribute.  Finally, transfer would be in the public interest.  To permit this case to continue in New Jersey while an identical cause of action proceeds in California involving the same issues and overlapping class members would be an inefficient use of judicial resources.  Transfer will promote judicial efficiency, economy and consistency of results.

**C.  <u>Exceptions to the First-Filed Rule</u>**

As noted, a court can decline to apply the first-filed rule where there is evidence of bad faith, anticipatory suit, or forum shopping.  <u>EEOC</u>, 850 F.2d at 976.  The plaintiffs allege that the <u>Thurston</u> plaintiffs have engaged in forum shopping.  The plaintiffs point out that on October 20, 2010, counsel representing the <u>Thurston</u> plaintiffs ("California counsel") filed a complaint on behalf of plaintiff Tanasha Denmon-Clark entitled <u>Clark v. Conopco, Inc. d/b/a/ Unilever</u>, Civ. No. 10-7898-VBF (OPX) (C.D. Cal.) (Pl. Ex. D, Denmon-Clark Compl.)  This action was filed in the Central District of California on behalf of California consumers who purchased Breyers

**FOR PUBLICATION**

ice cream containing alkalized cocoa.  The <u>Denmon-Clark</u> action was assigned to a district judge. (Pl. Ex. E, Docket Sheet.)

Four days after the <u>Denmon-Clark</u> action was assigned, California counsel filed the <u>Thurston</u> complaint in the Northern District of California, which was identical to the complaint filed on behalf of Tanasha Denmon-Clark.  The only difference was the first-named plaintiff, who was now Chanee Thurston.  (Pl. Ex. F, Thurston Compl.)  California counsel then filed a notice of voluntary dismissal of the <u>Denmon-Clark</u> action the following day.  (Pl. Ex. G, Notice of Voluntary Dismissal.)  The defendant has filed a motion to dismiss the <u>Thurston</u> action, based in part upon California counsel's alleged forum shopping.  (Pl. Ex. H, Unilever Motion to Dismiss.)

The defendant argues, and it is true, that this type of "forum shopping" scenario is unlike those typically found to fit within the forum shopping exception.  Normally, a plaintiff must establish that the defendant in the second action (Unilever) filed the first action (Thurston) to avoid the second forum (New Jersey).  <u>See</u>, <u>e.g.</u>, <u>EEOC</u>, 850 F.2d at 978; <u>FMC Corp. v. AMVAC Chem Co.</u>, 379 F. Supp. 2d 733 (E.D. Pa. 2005).  That is not the case here.  Instead, it is alleged that the <u>Thurston</u> plaintiffs re-filed in the Northern District of California in order to avoid the Central District of California.  However, the rule also permits exception where there is evidence of inequitable conduct and bad faith.  <u>See</u> <u>EEOC</u>, 850 F.2d at 976.  It is disingenuous for the defendant to argue that there is no forum shopping here, while simultaneously trying to dismiss the <u>Thurston</u> action on forum shopping grounds.  The Court finds that it would be an inequitable result if this case were transferred to California, only to be dismissed due to the <u>Thurston</u> plaintiffs' forum shopping.  This would unfairly deprive the <u>Catanese</u> plaintiffs of their day in court, and the opportunity to have the merits of their substantive claims evaluated.  In

**FOR PUBLICATION**

order to prevent such a result, the Court will transfer the <u>Catanese</u> action to California, but grant the plaintiffs leave to re-file if the <u>Thurston</u> action is dismissed on procedural grounds.

    **D.**  **<u>The Astiana Action</u>**

       The Court does not reach the defendant's arguments regarding the <u>Astiana</u> action in California because it finds sufficient similarity between the <u>Thurston</u> and <u>Catanese</u> actions for the first-filed rule to apply.  The fate of the <u>Astiana</u> action is for the California courts to decide.

**CONCLUSION**

       The Court concludes that this matter should be transferred to the Northern District of California.  The plaintiffs are granted leave to re-file if, after the pending motion to dismiss is decided, the <u>Thurston</u> action is dismissed on procedural grounds.

<u>**s/ William H. Walls**</u>
United States Senior District Judge